UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRAD BOUTIN, ET AL.** | * | **CIVIL NO. 07-0567** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **NEWFIELD EXPLORATION CO., ET AL.** | * | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM RULING ON MOTION FOR
## JUDGMENT AS A MATTER OF LAW AND/OR NEW TRIAL

Pending before the Court is the Motion and Order for Judgment as a Matter of Law and/or New Trial on Behalf of Plaintiffs, Brad Boutin, Individually and as Administrator of the Estate of the Minor Child, Christian Boutin, filed on October 14, 2010. [rec. doc. 429]. On December 8, 2010, the Court held a hearing on the motion, after which I took it under advisement. For the following reasons, the motion is **DENIED**.

### Background

Plaintiff, Brad Boutin ("Boutin"), an employee of Island Operating, filed suit for injuries sustained on September 20, 2006, while he was working aboard a satellite production platform owned by Newfield Exploration Company ("Newfield") in East Cameron Block 286-A, approximately 80 miles south of Vermilion Parish, Louisiana.[1] Boutin was assigned to bring a nearby platform online, as well as to allow an employee of

---

[1] "In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *U.S. Commodity Futures Trading Com'n v. Dizona*, 594 F.3d 408, 413 (5th Cir. 2010) (*quoting Price v. Marathon Cheese Corp.*, 119 F.3d 330, 300 (5th Cir. 1997)).

Environmental and Safety Systems International, Inc. ("ESSI") to replace fog horns and navigational lights which had been damaged by Hurricane Katrina and/or Rita.

At the time of the accident, Bouton and an ESSI employee, Brett Ortego ("Ortego"), were the only individuals aboard the platform.  As lead operator, Boutin was in charge and primarily responsible for safety on the platform.  In that capacity, he had stop work authority if he believed any unsafe condition existed.

On the day of the accident, Boutin and Ortego were jointly engaged in replacing a foghorn on the lower deck of the platform.  They decided that a portion of the main deck grating would be removed so that the foghorn could be lowered through the opening in the grating on the main deck, which was in the middle of the platform.  While removing the deck grating by hand, the grating fell to the deck below, creating an open hole on the main deck.

A metal safety barricade was available on the platform to protect workers from falling into the hole.  Boutin initially placed the safety barricade around the hole, but moved it off of the hole by himself on more than one occasion to reach a parts locker on the main platform deck where tools and supplies were kept to work on production equipment.

During the course of the job, Boutin went to retrieve shackles from the parts locker. When he did so, he accidently fell through the open hole, landing on the deck below.  The barricade was not over the hole at that time. As a result of this accident, Boutin was left a paraplegic.

On February 28, 2007, Boutin filed a suit for his damages and loss of consortium for his minor child, Christian Boutin, against various defendants, including Newfield, Grasso Production Management, Inc. ("Grasso"), ESSI and several insurance companies, in the 15th Judicial District, Vermilion Parish, State of Louisiana.[2] Defendants removed the action to this Court on March 26, 2007.

A jury trial was held in this matter from August 30, 2010, through September 3, 2010. The jury rendered a verdict in favor of Westchester Fire Insurance Company, as insurer of Grasso, and against plaintiffs, dismissing plaintiffs' claims with prejudice. A judgment consistent with this verdict was entered by the Court on September 13, 2010. [rec. doc. 419].

On October 14, 2010, plaintiffs filed the instant Judgment as a Matter of Law and/or New Trial. [rec. doc. 429]. Oral argument was held on December 8, 2010, after which the Court took the matter under advisement. [rec. doc. 450].

## Standard for Judgment as a Matter of Law and New Trial

Rule 50 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

**(a) Judgment as a Matter of Law**.

(1) *In General*. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

---

[2] All defendants except Grasso were dismissed on motions for summary judgment or through voluntary dismissal by plaintiffs.

3

>    **(A)** resolve the issue against the party; and
>
>    **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2)** *Motion*. A motion for judgment as a matter of law may be made at any time ***before the case is submitted to the jury***. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

(emphasis added).

Judgment as a matter of law is appropriate after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Dizona*, 594 F.3d at 413 (*quoting* Fed. R. Civ. Proc. 50(a)). Although the court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe", that is, the Court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* (*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

For a post-verdict motion for judgment as a matter of law, Rule 50 (b) provides as follows:

> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.

> No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.
>
> Rule 59 provides, in pertinent part, as follows:
>
> **(a) In General**.
>
> **(1) *Grounds for New Trial***. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; . . .

Upon the conclusion of a jury trial, Fed R. Civ. Proc. 59 empowers the trial court, on motion, to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court [.]"  Deciding whether to grant a new trial is a matter "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980).

A trial court "should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002) (*quoting Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir.1998)).  Even if substantial evidence supports the jury's verdict, the court may find that

the weight of the evidence is against the verdict; however, the court cannot grant a new trial "simply because [the court] would have come to a different conclusion then the jury did." *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir.1998) (internal quotations omitted).

Likewise, "[t]he fact that there was conflicting testimony regarding causation and damages is not grounds for a new trial." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir.1992). "Where the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld." *Id*. The court views the evidence "in a light most favorable to the jury's verdict . . . and [the verdict] must be affirmed unless . . . the court believes that reasonable persons could not arrive at a contrary decision." *Id*. (*citing Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir.1989).

Furthermore, "a trier of facts need not accept the opinion testimony of expert witnesses, even though uncontradicted." *Griffin v. Missouri P.R. Co.*, 413 F.2d 9, 13 (5th Cir.1969) (*quoting Boon Enterprises, Inc., v. Carstairs*, 312 F.2d 323 (5th Cir.1963)). In evaluating expert testimony, jurors "have a right to use their own common sense and experience and to draw all reasonable inferences from the physical facts and occurrences." *Remington Arms Co. v. Wilkins*, 387 F.2d 48, 54 (5th Cir.1967).

## Analysis

At the outset, defendant notes that plaintiff failed to bring a Rule 50 motion at trial before the verdict was reached. Accordingly, defendant argues, Boutin waived his right to request judgment as a matter of law.

The record shows that plaintiff did not move for judgment as a matter of law prior to the time that the case was submitted to the jury. Indeed, the record reflects that defendant moved for judgment as a matter of law both at the close of plaintiff's case and at the close of its own evidence, before the case went to the jury. [rec. doc. 410].

However, plaintiff argues that the Court may excuse "technical compliance" when the purposes of Rule 50 are satisfied. Generally, a party who fails to present a Rule 50 (a) motion on an issue at the close of evidence waives both its right to present a Rule 50 (b) motion after judgment and its right to challenge the sufficiency of the evidence on appeal. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (*citing* Fed. R. Civ. P. 50(b); *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 238 (5th Cir. 2001). However, Rule 50 (b) is construed liberally, and the court may excuse "technical noncompliance" when the purposes of the rule are satisfied. *Id*. (*citing Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir.1996)).

The two basic purposes of this rule are "to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury." *Id*. (*quoting MacArthur v. Univ. of Tex. Health Ctr.*, 45 F.3d 890, 897 (5th Cir.1995)). In addition, a "defendant's objection to proposed jury instructions on grounds pertaining to the sufficiency of the evidence issues it seeks to appeal may satisfy these purposes." *Id*. (*quoting Scottish Heritable Trust, PLC,* 81 F.3d at 610).

Boutin argues that both purposes have been satisfied. As to the first ground, plaintiff asserts that the Court had the opportunity to re-examine the sufficiency of the evidence when defendants presented both of their motions for judgment as a matter of law during the trial. He contends that based on the Court's rulings and conduct, the Court "clearly indicated" that it would not grant sufficiency motions and intended to give the case to the jury. [rec. doc. 449, p. 2; Tr. 765, 873]. Plaintiff further asserts that any such motion by him would have constituted a "vain and useless act" that was not required.

Boutin's basis for the instant motion is that the jury did not have a legally sufficient evidentiary basis to find that Grasso was not liable for any percentage at fault in causing his damages. [rec. doc. 429, p. 12]. Specifically, he asserts that the jury ignored "undisputed evidence" of Kevin Lafleur's negligence, finding that Boutin was solely at fault. Essentially, Boutin argues that Lafleur, a Grasso field foreman who was Boutin's supervisor on the morning of the accident, sent Boutin to the production platform without enough manpower. Because the platform did not have enough workers, he contends, it was unsafe for Boutin to do the job assigned, ultimately leading to his accident.

The Court finds that defendant had more than adequate notice of the basis of plaintiff's argument in this case. Numerous motions *in limine* were filed directed to Lafleur's conduct on or prior to the accident at issue, which motions were extensively briefed and argued by the parties. The Court had two opportunities to re-examine the question of evidentiary insufficiency as a matter of law when defendant urged and re-urged

its motion for judgment as a matter of law. Clearly, defendant was alerted to plaintiff's argument for insufficiency before the case was submitted to the jury. Accordingly, based on the specific circumstances in this case, the Court excuses plaintiff's technical noncompliance with Rule 50.

As to the merits of Boutin's motion, the Court finds that the jury had a legally sufficient evidentiary basis to find for defendant in this case. While Boutin presented testimony regarding Lafleur's actions in this case, the jury chose to believe that Boutin was responsible for causing his own injuries.

The trial testimony shows that Boutin and Ortego decided to detach an old foghorn from the cellar deck and replace it with a new foghorn which had been placed on the production deck. (Tr. 437). In order to do move the new foghorn to the deck below, they removed a hatch in the deck grating. After they removed the hatch, it fell to the cellar deck below, creating a hole in the production deck. (Tr. 439).

In order to lower the new foghorn to the deck below, Boutin removed the barricade completely off of the hole. (Tr. 440, 509). Boutin helped Ortego lower the new foghorn down with a rope and place it onto the cellar deck, then returned up to the production deck to perform function testing. (Tr. 442, 783).

A tool cabinet was located on the production deck. To get to the tool cabinet, Boutin had to slide the barricade which had been placed over the hole in the production deck out of the way. (Tr. 444-45). Boutin testified that he had moved the barricade and slid it back over

the hole more than one time. (Tr. 446, 505-06).

Boutin and Ortego's job was to install the new foghorn. (Tr. 420, 784). Boutin admitted that he and Ortego were sufficient to install the new foghorn. (Tr. 489). Ortego testified that ESSI typically left the old foghorn on the platform because it took too much work and time to remove it. However, Boutin wanted to remove the old foghorn from the platform.

Boutin decided to use the crane to get the old foghorn off of the deck. (Tr. 446, 499, 785). In order to use the crane, Boutin and Ortego had to open the hatch on the heliport. (Tr. 446). While operating the crane, Boutin realized that he needed a new shackle. (Tr. 788, 790). Boutin stopped the crane, then came down from the helideck to the production platform to get some shackles from the tool cabinet. (Tr. 446, 449, 790).

After getting the shackles from the tool cabinet, Boutin fell through the hole on the production deck onto the deck below. (Tr. 449). Boutin said that he did not remember anything from the time that he came down to the toolbox until he was on the floor of the cellar deck. (Tr. 449). However, he testified that he had removed the barricade all of the way off of the hole in order to lift up the old foghorn. (Tr. 509).

Additionally, the eyewitness, Ortego, testified that the barricade was not over the hole at the time that Boutin fell. (Tr. 792-93). Grasso employee Tracy Richard, who was the first person to arrive at the platform after Boutin's fall, testified that the barricade was still in its storage position and not over the hole. (Tr. 866). Based on the evidence presented at trial, it

was reasonable for the jury to have concluded that Boutin had fallen through the unbarricaded hole which he caused.

Although Boutin argues that his accident would not have happened absent Lafleur's fault for having sent him to do the job without enough manpower, the jury chose to believe that Boutin was responsible for his own injuries. As previously stated, the fact that there was conflicting testimony regarding causation and damages is not grounds for a new trial. *Dawson*, 978 F.2d at 208. Where the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld. *Id*. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences should be left to the jury. *Dizona*, 594 F.3d at 413.

Viewing the evidence in a light most favorable to the jury's verdict, the Court finds that the verdict must be affirmed. The extensive evidence presented in this case was more than sufficient to uphold the jury's decision. Thus, the Court finds that the jury had a reasonable basis for its decision. *Dawson*, 978 F.2d at 208.

Next, Boutin argues that the jury verdict was "tainted" by the instruction and closing argument on intervening cause. [rec. doc. 429, p. 17]. However, Boutin did not quote the instruction or attach it to his brief. In any event, the Court finds that the instruction was proper under Louisiana law. (Tr. 926).

Further, Boutin questions the Court's rulings on the Motion *in Limine* to Exclude Testimony of Robert Borison ("Borison") [rec. doc. 374], as and well as other evidentiary

rulings. [rec. doc. 429, pp. 19-30]. This Court extensively considered the motion regarding Borison both prior to and at the trial. In fact, the Court held a *Daubert* hearing in the middle of trial, and allowed additional argument to clarify the scope of Borison's testimony. (Tr. 583-606; 616-21). As to the other evidentiary rulings, the Court has already addressed these and will not revisit them.

Finally, Boutin argues that the Court erred in granting the motion for summary judgment filed by Roclan Service & Supply, Inc. ("Roclan") [rec. doc. 429, p. 31]. The Court has reviewed Judge Doherty's ruling, and found that it was well-reasoned and supported by established law. [rec. doc. 201]. Additionally, Boutin moved to dismiss Roclan from this case with prejudice, which motion was granted. [rec. doc. 277, 285]. Thus, this cannot be relitigated.

## Conclusion

For the foregoing reasons;

**IT IS ORDERED** that the Motion for Judgment as a Matter of Law and/or New Trial is **DENIED**.

December 30, 2010, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE